IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SHAUN M., by and through his mother, KOOKIE W., | ) ) ) | CIV. NO. 09-00075 DAE/BMK |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| PATRICIA HAMAMOTO, in her official capacity as Superintendent of the Hawaii Public Schools; and DEPARTMENT OF EDUCATION, STATE OF HAWAII, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER REVERSING IN PART THE ADMINISTRATIVE HEARINGS
OFFICER'S FINDINGS OF FACT, CONCLUSIONS OF LAW AND
REMANDING TO THE HEARINGS OFFICER ON THE ISSUE OF
COMPENSATORY EDUCATION

On October 5, 2009, the Court heard Plaintiff's appeal of a decision

rendered by an administrative hearings officer concerning the provision of special

education and related services.  Irene E. Vasey, Esq., Mei Nakamoto, Esq., and

Robin V. Scott, Esq., appeared at the hearing on behalf of Plaintiffs; Deputy

Attorney General Gary K.H. Kam appeared at the hearing on behalf of Defendants.

After reviewing the appeal and the supporting and opposing briefs, the Court

REVERSES IN PART the hearings officer's Findings of Fact, Conclusions of Law

with respect to the failure of the DOE to provide transition services and

REMANDS to the Hearings Officer the issue of compensatory education as

outlined below.

## BACKGROUND

Shaun M. is a three-year-old boy who lives with his parents and two

older brothers.  When Shaun M. was 12 to 15 months old, his pediatrician

identified possible developmental delay in Shaun M.'s speech.  In 2007, Shaun

M.'s mother ("Mother") authorized the Department of Health ("DOH") to begin

early intervention services through Part C of the Individuals with Disabilities in

Education Act ("IDEA"),  20 U.S.C. § 1400, et seq.  Part C services are provided

by DOH from birth to age three, at which time the child may be transitioned to

IDEA Part B services, which are provided by the Department of Education

("DOE").  Under Part C, an Individualized Family Support Plan was developed for

Shaun M (the "Part C IFSP").  The Part C IFSP services were provided three times

a week and included nursing and psychological services, as well as occupational,

physical, and speech therapy.  The anticipated end date for these services was June

15, 2008, at which time it was anticipated that Shaun M.'s services would be

transitioned to Part B educational services under supervision of the DOE.

2

Due to Shaun M.'s particular difficulties with transitioning, the Part C IFSP team developed a plan that would gradually allow Shaun M. to transition into Part B services. On April 23, 2008, Mother submitted a Student Enrollment Form in order to start the eligibility process. Mother sought to enroll Shaun M. at Kailua Elementary School because his older brother attended the school. Mother continued to cooperate in the eligibility process, attending meetings and submitting Shaun M. to evaluations.

On June 10, 2008, an IDEA eligibility meeting was held. Shaun M. was determined to be eligible to receive special education and related services under the category of developmental delay. At the meeting, Mother signed the Consent for Initial Provision of Special Education and Related Services, which authorized DOE to provide services to Shaun M. The IEP team then met and developed an IEP for Shaun M., which included speech, occupational, and physical therapy sessions in a fully self contained special education preschool program.

Mother did not have any objections to the substantive provisions of the IEP. The IEP team discussed, however, the possibility of placing Shaun M. at Kainalu Elementary School, rather than Kailua, because of concerns regarding how he behaved and interacted with his brother. It does not appear that a resolution was reached at that time about whether to place Shaun M. at Kainalu or Kailua.

3

In June 2008, a new Part C IFSP was implemented for Shaun M. The new services included psychological services and were scheduled to end on October 29, 2008, the day before Shaun M.'s third birthday. The new Part C IFSP was designed to provide support to Shaun M. during the transition to DOE services. Because the DOH knew Kailua Elementary School only had one self-contained special education classroom, the team overseeing the Part C IFSP arranged to have Shaun M. and his brother work together during several sessions in order to improve their behavioral difficulties.

On June 30, 2008, a non-IEP meeting was held. Present at the meeting were: (1) Phyllis Ida, a DOE coordinator for preschool services; (2) Carrie Pisciotto, the program manager and special education teacher for the Easter Seals who ran the Part C IFSP; (3) Keri Kobayashi, PHN, Shaun M.'s early intervention care coordinator; (4) a social worker; (5) Berlye Ishizaki, a student services coordinator at Kainalu; (6) Jo Ann Yamashita, a special education teacher at Kailua; (7) Lanelle Hibbs, principal at Kailua; (8) Jill Yamauchi, a student services coordinator at Kailua; and (9) Mother. The major focus of discussion was whether to place Shaun M. at Kainalu or Kailua. Mother expressed her desire to have Shaun M. be at the same school as his brother. The Part C IFSP staff who were present supported Mother's position and Keri Kobayashi, Shaun M.'s care

4

coordinator, suggested a 90-day trial period to see how Shaun M. and his brother functioned in the same classroom at Kailua.

On September 15, 2008, the IEP team met to discuss where Shaun M. was going to be placed. Many of the same staff from the June 2008 meeting attended the IEP meeting, along with additional teachers, therapists, and coordinators. Several of the Part C IFSP staff again voiced their support of Mother's position, that Shaun M. be placed at Kailua with his brother.

Jo Ann Yamashita, Kailua's special education teacher, voiced her concern that Shaun M.'s brother would be detrimentally affected by having Shaun M. in the same classroom. Yamashita also explained that there was a medically fragile student in the same classroom and that she was concerned for the student's physical safety. These concerns were underscored by Barbara D. Lee, a DOH psychologist, who recommended that the two brothers not be placed in the same classroom.

On October 22, 2008, the IEP team reconvened to discuss where Shaun M.'s IEP would be implemented. Many of the same participants from the last meeting were present. Based on the matters discussed at the meeting, the IEP team developed the October 22, 2008 IEP for Shaun M. The October 22, 2008 IEP noted that a majority of the IEP team determined that Shaun M. should be placed at

Kainalu.  This decision was premised on the concerns about Kailua's ability to provide for Shaun M.'s needs in conjunction with the needs of Shaun M.'s brother and other special education students at Kailua.  It was at this meeting that the IEP team officially made the offer of FAPE to Mother, requiring Shaun M. be placed at Kainalu.

On October 30, 2008, Shaun M.'s Part C IFSP services automatically terminated when he turned three years old.  It appears that Shaun M. had never received any DOE services prior to his birthday or in the days immediately following.  On November 6, 2008, Mother filed a Request for Impartial Hearing.  In her request, Mother did not object to any of the substantive provisions of the October 22, 2008 IEP; rather, she wanted Shaun M. to be placed at Kailua instead of Kainalu Elementary School.  On November 19, 2008, the parties met and DOE agreed to provide the services that were previously provided under Shaun M.'s Part C IFSP, pending completion of the administrative review process.  Services were subsequently arranged and DOE began providing these services on November 25, 2008.

A hearing on Mother's due process request was held before Senior Hearings Officer Rodney A. Maile (the "Hearings Officer") on January 6, 7, and 15, 2009.  After reviewing the initial briefs and supplemental closing briefs, the

Hearings Officer issued his Findings of Fact, Conclusions of Law.  In the Findings of Fact, Conclusions of Law, the Hearings Officer found that DOE had not failed to provide a Free and Appropriate Public Education ("FAPE").  Instead, the Hearings Officer concluded that the October 22, 2008 IEP had been the correct educational placement for Shaun M. and that Kainalu Elementary was an appropriate location.

Shaun M., by and through Mother (together, "Plaintiffs"), timely filed their complaint on February 19, 2009, appealing the decision of the Hearings Officer.  After transmittal of the administrative record, Plaintiffs filed their opening brief on July 28, 2009.  (Doc. # 23.)  On August 28, 2009, DOE filed its response. (Doc. # 24.)  On September 11, 2009, Plaintiffs filed a reply brief.  (Doc. # 26.)

The Court held a hearing on the matter on October 5, 2009.  At the hearing, the Court was informed that Shaun M. was now attending Kailua Elementary School, as Mother had originally desired, because his brother had aged out of the program and was now in a kindergarten classroom.  Under the circumstances, the only remaining dispute lie with the 26-day period in which Shaun M. received no DOE services.  The Court ordered the parties to appear before Magistrate Judge Kevin S.C. Chang in order to pursue a settlement.  After two attempts at settlement, the Court was informed that no settlement could be

reached.  (Doc. # 30.)  Accordingly, the Court issues the following decision on the administrative appeal.

### STANDARD OF REVIEW

The IDEA states in part:

> any party aggrieved by the findings and decision made [pursuant to an administrative hearing], shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any state court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

22 U.S.C. § 1415(h)(i)(2)(A).

When a party files an action challenging an administrative decision under the IDEA, a district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(h)(i)(2)(C); see also Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1471 (9th Cir. 1993).  The party challenging the administrative decision bears the burden of proof.  See Seattle Sch. Dist., No. 1 v. B.S., 82 F.3d 1493, 1498 (9th Cir. 1996); Hood v. Encinatas Union Sch. Dist., 486 F.3d 1099, 1103 (9th Cir. 2007).

"[J]udicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review." Ojai Unified Sch. Dist., 4 F.3d at 1471.  District courts have discretion concerning how much deference to give to state educational agencies.  Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1311 (9th Cir. 1987).  Courts need not follow the traditional test that findings are binding if supported by substantial evidence or even a preponderance of the evidence.  Id.  A court may not, however, simply ignore the administrative findings.  Ojai Unified Sch. Dist., 4 F.3d at 1474.  Given the expertise of the administrative agency and the political decision to vest the initial determination with the agency, deference to the hearing officer is warranted in cases where the officer's findings are "careful and thorough."  Id. (citing Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988)); Capistrano v. Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 891 (9th Cir. 1995).  In the end, district courts are free to determine how much deference to accord decisions of a hearing officer in light of the circumstances.  County of San Diego v. Cal. Spec. Educ. Hearing Office, 93 F.3d 1458, 1466 (9th Cir. 1996).

## DISCUSSION

Plaintiffs present two questions in their appeal: (1) whether the Hearings Officer erred by finding and concluding that DOE provided Shaun M. with a FAPE even though it does not appear Shaun M. received a "smooth and effective transition" from Part C IFSP services to Part B DOE services; and (2) whether the Hearings Officer erred by finding and concluding that DOE complied with the IDEA's "stay put provision" and provided Shaun M. with a FAPE even though services under Part B were not provided to Shaun M. for 26 days. (Opening Brief at 1.)  A careful reading of these questions, along with the substance of Plaintiffs' opening brief, indicates that Plaintiffs are not appealing the underlying decision of the Hearings Officer finding and concluding that Kainalu was an appropriate placement for Shaun M. under the IDEA.  Instead, the arguments set forth in Plaintiffs' complaint and opening brief rely solely on the transition (or lack thereof) from Part C IFSP services to DOE Part B services.  (See also Compl. ¶ 10.)  As such, the Court will not disturb the conclusion of the Hearings Officer that Kainalu is an appropriate placement for Shaun M., because the issue was not properly raised on appeal before this Court.  See S.J. ex rel.

<u>S.H.J. v. Issaquah School Dist. No. 411</u>, 326 Fed. App'x 423, 425 n.2 (9th Cir. 2009)[1].

Secondly, Plaintiffs neither raised the issue of the stay put provision in their complaint nor did they present substantive argument regarding the stay put provision in their opening brief.  In fact, nearly the only reference[2] to the stay put provision is found in the second "question presented."  (<u>See</u> Opening Brief at 1.) Moreover, the Hearings Officer did not conclude, as the second question presented suggests, that DOE complied with the stay put provision.  (AR at 246.)  Instead, the Hearings Officer concluded that the issue of the stay put claim was moot

---

[1]Ninth Circuit Rule 36-3 provides that unpublished dispositions and orders "are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion."  The rule also provides that unpublished dispositions issued on or after January 1, 2007, may be cited to the courts of the Ninth Circuit in accordance with Fed. R. App. P. 32.1, which states that a party who cites an unpublished order that is not publically available in an electronic database must provide a copy of the order.  The case cited above was issued after January 2007 and is available in an electronic database.

[2]The stay put provision is briefly referenced on page 15 of Plaintiffs' Opening Brief.  (Opening Brief at 15 ("The IDEA's language of a "smooth and effective transition," its "stay put" provision during IDEA disputes . . ., and the procedural safeguards embedded within the IDEA is proof of Congress' intent for a "seamless system" of services for IDEA eligible children.").)  This reference clearly does not stand alone; rather, it is used only as evidence of Congress' intent to create a seamless system for young children.

because DOE had agreed with Plaintiffs to provide Part C IFSP services to Shaun M. during pendency of the appeal.  (Id.)

Accordingly, the Court finds that Plaintiffs failed to properly raise an issue regarding the stay put provision on appeal before this Court.  As such, the Court concludes that the only issue on appeal involves the DOE's alleged failure to properly transition Shaun M., resulting in a material denial of a FAPE.

I.      DOE's Failure to Provide Transition and Part B Services to Shaun M.

Plaintiffs argue that Shaun M. was denied a FAPE due to DOE's failure to transition services from Part C to Part B and for his lack of services for 26 days in November.  Specifically, Plaintiffs contend that this failure amounted to a procedural violation of IDEA that deprived Shaun M. of education benefits. (Opening Brief at 12-14.)

To support this claim, Plaintiffs cite the two-part test announced in Board of Education v. Rowley, 458 U.S. 176 (1982).  Under Rowley, a court must assess whether DOE provided a student with a FAPE by asking two questions: "First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?"  Id. at 206-07 (internal footnotes omitted).  In essence, Rowley is viewed as requiring

12

both procedural and substantive compliance with the strictures of the IDEA.  <u>See</u>

<u>M.L. v. Fed. Way Sch. Dist.</u>, 394 F.3d 634, 644 (9th Cir. 2005).  However, the

court need not reach the question of substantive compliance if the court finds

"'procedural inadequacies that result in the loss of educational opportunity, or

seriously infringe the parents' opportunity to participate in the IEP formulation

process, or that caused a deprivation of educational benefits.'"  <u>Ms. S. ex rel. G. v.</u>

<u>Vashon Island Sch. Dist.</u>, 337 F.3d 1115, 1129 (9th Cir. 2003) (quoting <u>Amanda J.</u>

<u>ex rel. Annette J. v. Clark County School Dist.</u>, 267 F.3d 877, 892 (9th Cir. 2001)).

  As the Ninth Circuit has recognized, there is some leeway in the

procedural requirements:

> Not every procedural violation, however, is sufficient to
> support a finding that the child in question was denied a
> FAPE. Technical deviations, for example, will not render
> an IEP invalid. On the other hand, procedural
> inadequacies that result in the loss of educational
> opportunity, or seriously infringe the parents'
> opportunity to participate in the IEP formulation process,
> or that caused a deprivation of educational benefits,
> clearly result in the denial of a FAPE.

<u>Amanda J.</u>, 267 F.3d at 892 (citations and internal quotations omitted).

  The procedural safeguards which may give raise to a procedural

complaint are found at 20 U.S.C. § 1415(b).  Although not necessarily an

exhaustive list[3], the statute describes several procedural protections such as: (1) an opportunity for parents to examine all records and obtain an independent evaluation of the child (§ 1415(b)(1)); (2) written notice to the parents whenever there is a proposal to change the IEP (§ 1415(b)(3)); and (3) the right of the parent to present a complaint with respect to the eligibility of the child for services or regarding his or her IEP (§ 1415(b)(6)).  See also Amanda J., 267 F.3d at 882. These safeguards establish procedures for the creation of an IEP and review of its content.  See Van Duyn ex rel. Van Duyn v. Baker School Dist. 5J, 502 F.3d 811, 818 (9th Cir. 2007).

Plaintiffs' argument, however, does not have to do with the creation or content of the IEP but rather with its implementation.  Plaintiffs have not raised any issue on appeal regarding the substance of the IEP.  (See infra at 10.)  Instead, this Court has determined that the only issue properly on appeal is the DOE's alleged failure to provide the services outlined in the IEP.[4]

---

[3]For instance, DOE may also be bound by procedural safeguards established by individual states.  See 20 U.S.C. § 1415(a).

[4]Of course, DOE claims that the reason they were unable to provide services was because of Mother's ultimate disagreement with the placement of Shaun M. at Kainalu.  Nevertheless, because that issue was not properly raised on appeal, the Court declines to address the substantive provisions of the IEP, instead focusing on the lack of implementation.

The Ninth Circuit has recently distinguished complaints about the

content of the IEP with allegations regarding its implementation.  See Van Duyn,

502 F.3d at 818-22.  In Van Duyn, the parents of an autistic child contested the

manner in which his IEP had been implemented.  Id. at 816.  In particular, the

parents argued that DOE had completely failed to provide certain services,

including math instruction, a behavior management plan, and placement in a self-

contained classroom.  Id. at 823.

In Van Duyn, the Ninth Circuit noted that most IDEA cases involve

the formulation of an IEP rather than its implementation and that Rowley remained

the law governing the former issue.  Id. at 820-21.   The court explained that

because of this distinction, it had not yet articulated the standard for assessing an

IEP's implementation.  Id. at 821.

After reviewing decisions of sister courts of appeal, the Ninth Circuit

announced a new standard: that "a material failure to implement an IEP violates the

IDEA."  Id. at 822 (emphasis in original).  The court went on to explain that "[a]

material failure occurs when there is more than a minor discrepancy between the

services a school provides to a disabled child and the services required by the

child's IEP."  Id.  The new materiality standard "does not require that the child

suffer demonstrable educational harm in order to prevail" but the court stated that

15

"the child's educational progress, or lack of it, may be probative of whether there has been more than a minor shortfall in the services provided." Id.

After Van Duyn, it is therefore clear that the standard to be used when assessing how an IEP is implemented is no longer the two-part test of Rowley. Rather, courts will use the Rowley test when making determinations about the formulation and content of an IEP, and they will use the Van Duyn materiality standard when making determinations about how that IEP was implemented.

Applying the Van Duyn materiality standard to this case, the Court finds that the DOE materially failed to implement the IEP developed for Shaun M. DOE's failure in this case is considerably more than a minor discrepancy. It is a wholesale failure to implement any of the services required by Shaun M.'s IEP. This complete lack of services of any kind certainly meets the Van Duyn test. See id. at 823-25 (carefully considering whether certain types of math instruction, behavioral management, and placement in a self-contained classroom rose to the level of the materiality standard).

Moreover, DOE's failure occurred over a significant period of time. All three IEPs developed for Shaun M. indicated that the projected starting date for his services was June 10, 2008. (See Respondent's Exs. 1 at 11; 2 at 26; 3 at 41.) The IEP team determined that such transition services were necessary due to Shaun

16

M.'s particular difficulties with transitioning.  As such, the team determined it would "work on a transition plan to discharge Shaun from early intervention services with Easter Seals and enroll in DOE program as soon as possible."  (Id.) Thus, although Shaun M.'s Part C IFSP services would not terminate until October 30, 2008, the IEPs clearly evinced a need to begin DOE services prior to that date.

DOE, in contravention of the needs outlined in its IEPs, failed to provide any services prior to Shaun M.'s third birthday.  The Court recognizes that development of an IEP and a final offer of FAPE necessarily may take several weeks and sometimes months.  The unique circumstances of each child and the fact-intensive nature of IEP placements often require an extensive period of analysis and discussion.  In this case, however, the major substance of the IEP was never in dispute.  It appears the only issue that remained unresolved was whether Shaun M. should receive his services at Kailua or Kainalu.  Despite holding several formal and informal meetings over the course of five months on this issue, DOE failed to come to a conclusion until its October 22, 2008 offer of FAPE.  Notably, this decision was made a mere 7 days before Shaun M.'s Part C IFSP services would expire.  And yet, despite finally coming to a decision on the content of the IEP, DOE failed to begin providing services to Shaun M. after October 22, 2008.

This failure is underscored by the effect it had on Shaun M.  As discussed above, although the materiality standard does not require that the child "suffer demonstrable educational harm in order to prevail," a "child's educational progress, or lack of it, may be probative of whether there has been more than a minor shortfall in the services provided." Van Duyn, 502 F.3d at 822.  After the disruption in Shaun M.'s services, Roselani Manuwai-Rowe, of the Learning Disability Association of Hawaii, observed that Shaun M. had regressed in his behaviors.  (Tr. of Record, Vol. 1, 180:4-15.)  She described his behavior as "animalistic."  (Id.)

Not only does this wholesale disregard for the IEP services constitute a material failure to implement the IEP, but it also violates other provisions of the IDEA.  In order to receive funding, the IDEA requires states to establish policies and procedures that ensure, among other things, that "[c]hildren participating in early intervention programs [under Part C], and who will participate in preschool programs [under Part B], experience a smooth and effective transition to those preschool programs . . .." 20 U.S.C. § 1412(a)(9).  The statute goes on to require that "[b]y the third birthday of such a child, an individualized education program[5]

---

[5]The statute does allow DOE to adopt a previously-created Part C IFSP as the new DOE IEP, so long as it complies with the strictures of 20 U.S.C. §
                                                        (continued...)

. . . has been developed and is being implemented for the child." Id.  While DOE

worked to develop an IEP for Shaun M., it is undisputed that the IEP was not

"being implemented" by his third birthday on October 29, 2008.  Especially in

light of Shaun M.'s unique difficulties with transitioning, the Court finds such

failure by the DOE inexcusable.

The Hearings Officer failed to address the lack of services provided to

Shaun M.  In fact, although he discussed the two-part test in Rowley, he did not

address the argument that the lack of services constituted a procedural violation of

the IDEA.  (See AR at 17-20.)  For the reasons stated above, the Court finds that

this failure by the Hearings Officer constitutes error.  Accordingly, the Court

REVERSES the Findings of Fact, Conclusions of Law with respect to that claim.

The Court reiterates, however, that it does not issue any opinion with respect to the

appropriateness of the placement of Shaun M. at Kainalu.

II.    Remedies

In their complaint, Plaintiffs seek compensatory services, attorneys

fees and costs, and any other relief this Court deems appropriate.  (Compl. at 5.)

---

[5](...continued)
1414(d)(2)(B).  Id.  In this case, however, there was no question that a new,
independent DOE IEP was being developed for Shaun M. and that the IEP team
envisioned transitioning him from Part C to Part B services.

19

DOE claims that Plaintiffs' request for compensatory services is barred for two reasons: (1) Plaintiffs failed to exhaust their administrative remedies by not raising the issue before the Hearings Officer below; and (2) Plaintiffs have failed to show that DOE did not provide special education services to Shaun M.  (Answering Brief at 15-18.)

After a careful review of the administrative record, the Court finds that Plaintiffs did properly request compensatory services below.  Plaintiffs' opening brief before the Hearings Officer specifically requested, among other things, "compensatory time [to] be given for the services not received."  (Suppl. AR, Doc. # 27 at Ex. A.)  Plaintiffs, in their closing brief, again requested the Hearings Officer "[o]rder compensatory time for any and all services missed as a result of the non-implementation of the June 10, 2008 IEP."  (AR at 191.)  As such, the Court finds that Plaintiffs sufficiently presented their request below and therefore exhausted their administrative remedies with respect to the request.

DOE next argues that Plaintiffs have not shown that DOE failed to provide services to Shaun M.  (Answering Brief at 16.)  This argument is without merit.  The Court has clearly found that DOE failed to provide IEP services to Shaun M.

20

Under the IDEA, a district court has the power to "grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(e)(2); see also Parents of Student W. v. Puyallup School Dist., No. 3, 31 F.3d 1489, 1496 (9th Cir. 1994). "[E]quitable considerations are relevant in fashioning relief." School Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 374 (1985). "The conduct of both parties must be reviewed to determine whether relief is appropriate." W.G. v. Bd. of Trs. of Target Range School Dist., 960 F.2d 1479, 1486 (9th Cir. 1992). However, the Ninth Circuit has held that "[t]here is no obligation to provide a day-for-day compensation for time missed. Appropriate relief is relief designed to ensure that the student is appropriately educated within the meaning of the IDEA." Parents of Student W., 31 F.3d at 1497.

Plaintiffs ask this Court to provide, "at the very least," the services Shaun M. missed during the 26-day gap. (Opening Brief at 20.)  These services are: (1) 68 minutes of Physical Therapy Services; (2) 1760 minutes per week of special education; (3) 540 minutes of Speech/Language Therapy; (4) 270 minutes of Occupational Therapy Services; and (5) transportation twice a day to and from these services.  (Id.)

21

A problem, however, arises with respect to these services because Shaun M. has presumably progressed since the time these initial services were developed nearly a year ago.  A child Shaun M.'s age, even one with developmental delays, progresses at a remarkable rate.  As such, the particular services listed above may not be precisely what Shaun M. needs at this point in time.

The Court, therefore, REMANDS the issue of compensatory education to the Hearings Officer.  The Hearings Officer is directed to consider evidence regarding Shaun M.'s current needs and whether compensatory education would benefit him at this time.  The Hearings Officer must then provide a detailed explanation as to why or why not compensatory education is warranted and his reasons for developing the particular compensatory program.

## CONCLUSION

For the reasons stated above, the Court REVERSES IN PART the Findings of Fact, Conclusions of Law of the Hearings Officer with respect to the

failure of DOE to provide transition services to Shaun M. and REMANDS to the

Hearings Officer the issue of compensatory education as outlined above.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 22, 2009.



_____
David Alan Ezra
United States District Judge

<u>Shaun M. v. Department of Education</u>, Civ. No. 09-00075 DAE/BMK; ORDER
REVERSING IN PART THE ADMINISTRATIVE HEARINGS OFFICER'S
FINDINGS OF FACT, CONCLUSIONS OF LAW AND REMANDING TO THE
HEARINGS OFFICER ON THE ISSUE OF COMPENSATORY EDUCATION