IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SHAUN M., by and through his mother, KOOKIE W., <br><br>             Plaintiffs, <br><br>     vs. <br><br> PATRICIA HAMAMOTO, in her official capacity as Superintendent of the Hawaii Public Schools; and DEPARTMENT OF EDUCATION, STATE OF HAWAII, <br><br>             Defendants. | Civ. No. 09-00075 DAE-BMK <br><br> FINDING AND RECOMMENDATION THAT PLAINTIFFS' RULE 54(D) MOTION FOR DETERMINATION AND AWARD OF ATTORNEYS' FEES AND COSTS BE GRANTED |

FINDING AND RECOMMENDATION THAT PLAINTIFFS' RULE 54(D) MOTION FOR DETERMINATION AND AWARD OF ATTORNEYS' FEES AND COSTS BE GRANTED

      Before the Court is Plaintiffs' Rule 54(d) Motion for Determination and Award of Attorneys' Fees and Costs.  After careful consideration of the motion, the supporting and opposing memoranda, and the attached documentation, the Court FINDS and RECOMMENDS that Plaintiffs' motion be GRANTED.[1]  Specifically, the Court FINDS that Plaintiffs are entitled to attorneys' fees and costs under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415, and RECOMMENDS that Plaintiffs be awarded $48,541.87 for attorneys'

---

[1] Pursuant to Local Rule 7.2(d), the Court elects to decide this matter without a hearing.

fees and $931.34 for costs.

## FACTUAL BACKGROUND

This case arises out of administrative proceedings concerning Shaun M.'s[2] October 22, 2008 Individualized Education Program ("IEP"). (Doc. # 34 at 5-6.) On November 6, 2008, Plaintiffs filed a Request for Impartial Due Process Hearing challenging the IEP. (Id. at 6.) In their request, Plaintiffs did not object to any of the substantive provisions of the IEP; rather they wanted Shaun M. to be placed at Kailua Elementary School rather than Kainalu Elementary School. (Id.)

Senior Hearings Officer Rodney A. Maile ("Hearings Officer") heard Plaintiffs' due process request on January 6, 7, and 15, 2009, and on January 30, 2009, he issued his Findings of Fact, Conclusions of Law, and Decision ("decision"). (Id. at 6-7; Doc. # 1 at Ex. A.) In his decision, the Hearings Officer concluded that Defendants provided Shaun M. with a Free and Appropriate Public Education ("FAPE"). (Doc. # 34 at 7.) Specifically, the Hearings Officer concluded that the IEP had been the correct educational placement for Shaun M. and that Kainalu Elementary School was an appropriate location. (Id.)

On February 19, 2009, Plaintiffs filed a complaint in this Court

---

[2] Shaun M. is qualified as a child with a disability under the IDEA and is eligible to receive special education and related services under the category of developmental delay. (Doc. # 34 at 3; Mot. at 2.)

appealing the Hearings Officer's decision. (Id.) On October 5, 2009, Judge David Alan Ezra held a hearing on the matter and on October 22, 2009, he issued his order. (Id.) In his order, Judge Ezra determined that the only issue properly on appeal was Defendants' alleged failure to properly transition Shaun M., resulting in a material denial of a FAPE.[3] (Id. at 12, 14.) Judge Ezra determined that this issue does not have to do with the IEP's creation or content, but rather with its implementation. (Id. at 14.) He noted that when making determinations about how an IEP was implemented, the Ninth Circuit applies the materiality standard of Van Duyn ex rel. Van Duyn v. Baker School District 5J, 502 F.3d 811 (9th Cir. 2007). (Id. at 16.) He explained that under this standard, "'a material failure to implement an IEP violates the IDEA.'" (Id. at 15 (citation omitted).) He further explained, "'[a] material failure occurs when there is more than a minor discrepancy between the services a school provides to a disabled child and the services required by the child's IEP.'" (Id. (alteration in original, citation omitted).)

        Judge Ezra held that applying the foregoing standard to the instant case, Defendants materially failed to implement Shaun M.'s IEP. (Id. at 16.)

---

[3] Plaintiffs argued that Shaun M. was denied a FAPE due to Defendants' failure to transition services from Part C to Part B and for Shaun M.'s lack of services for twenty-six days in November 2008. (Id. at 12.)

Judge Ezra stated, "[Defendants'] failure in this case is considerably more than a minor discrepancy. It is a wholesale failure to implement <u>any</u> of the services required by Shaun M.'s IEP." (<u>Id.</u>) Judge Ezra further held, "Not only does this wholesale disregard for the IEP services constitute a material failure to implement the IEP, but it also violates other provisions of the IDEA." (<u>Id.</u> at 18.) Judge Ezra reversed the Hearings Officer's decision to the extent that it failed to address the lack of IEP services provided to Shaun M.[4] (<u>Id.</u> at 19, 22-23.)

As to remedies, Plaintiffs requested, among other things, compensatory services. (<u>Id.</u> at 19.) Specifically, Plaintiffs requested the Court to provide, at the very least, the services Shaun M. missed during the twenty-six day gap. (<u>Id.</u> at 21.) Judge Ezra noted, however, that "[a] problem . . . arises with respect to these services because Shaun M. has presumably progressed since the time these initial services were developed nearly a year ago." (Id. at 22.) Judge Ezra noted, "As such, the particular services listed above may not be precisely what Shaun M. needs at this point in time." (<u>Id.</u>) Judge Ezra therefore remanded the issue of compensatory education to the Hearings Officer and directed him to consider evidence regarding Shaun M.'s current needs and whether compensatory education would benefit him at this time. (<u>Id.</u>) The Hearings Officer was then

---

[4] Judge Ezra, however, declined to issue any opinion with respect to the appropriateness of Shaun M.'s placement at Kainalu Elementary School. (<u>Id.</u> at 19.)

directed to provide a detailed explanation as to why or why not compensatory education is warranted and his reasons for developing the particular compensatory program.  (Id.)

On November 6, 2009, Plaintiffs filed the instant motion seeking attorneys' fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B).  Defendants filed their memorandum in opposition to said motion on November 23, 2009.

## DISCUSSION

I. Prevailing Party Status

Under the IDEA, "the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability."  20 U.S.C. § 1415(i)(3)(B)(i)(I).  Plaintiffs contend that they are the prevailing parties because Judge Ezra reversed in part the Hearings Officer's decision, concluding that Defendants materially failed to implement Shaun M.'s IEP and that such material failure violated the IDEA.  (Mot. at 6; Reply at 2.)

Defendants contend that Plaintiffs' motion is "premature" for two reasons.  (Opp. at 3.)  Defendants argue that first, the case was remanded to the Hearings Officer for a determination as to whether and to what extent Shaun M. would benefit from compensatory education.  (Id. at 5.)  Defendants note that on

remand, the Hearings Officer could determine that Shaun M. is not entitled to any compensatory education. (Id.) Defendants argue that Plaintiffs cannot be considered the prevailing parties "if they are awarded nothing." (Id.) Defendants argue that second, they have appealed Judge Ezra's order. (Id. at 6.) Defendants argue that should the order be reversed on appeal, Plaintiffs will not be the prevailing parties. (Id.)

"A prevailing party is one who 'succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.'" Van Duyn, 502 F.3d at 825 (quoting Parents of Student W. v. Puyallup Sch. Dist., No. 3, 31 F.3d 1489, 1498 (9th Cir. 1994)) (alteration in original). The success must create a material alteration of the parties' legal relationship and that alteration must be judicially sanctioned. P.N. v. Seattle Sch. Dist., No. 1, 474 F.3d 1165, 1172 (9th Cir. 2007). Because in this case, Judge Ezra's order satisfies the judicial sanction component of the prevailing party definition, the only issue is whether his order created a material alteration of the parties' legal relationship. His order created a material alteration of the parties' legal relationship if it gave Plaintiffs "the ability to 'require[ ] [Defendants] to do something [they] otherwise would not have [had] to do.'" V.S. ex rel. A.O. v. Los Gatos-Saratoga Joint Union High Sch. Dist., 484 F.3d 1230, 1233 (9th Cir. 2007) (quoting Fischer v. SJB-

P.D., Inc., 214 F.3d 1115, 1118 (9th Cir. 2000)).  Plaintiffs are not the prevailing parties if their success was "'purely technical or de minimis.'"  Id. (quoting Shapiro ex rel. Shapiro v. Paradise Valley Unified Sch. Dist. No. 69, 374 F.3d 857, 865 (9th Cir. 2004)); see also Parents of Student W., 31 F.3d at 1498.

The Court finds that here, Judge Ezra's order required Defendants to do something they otherwise would not have had to do.  As mentioned above, Judge Ezra reversed the Hearings Officer's decision to the extent that it failed to address the lack of IEP services provided to Shaun M.  (Doc. # 34 at 19, 22-23.)  Judge Ezra then remanded the issue of compensatory education to the Hearings Officer for further findings regarding Shaun M.'s current needs and whether compensatory education would benefit him at this time.  (Id. at 19, 22-23.)  Defendants' further participation in the case while the issue of compensatory education is on remand constitutes an obligation Defendants would not had absent Judge Ezra's order.

Furthermore, the Court finds that Plaintiffs' success was not purely technical or de minimis.  Judge Ezra concluded that Defendants materially failed to implement Shaun M.'s IEP.[5]  (Id. at 16.)  Judge Ezra further concluded, "Not

---

[5] Specifically, Judge Ezra concluded that Defendants' failure was "considerably more than a minor discrepancy" but rather, it was "a wholesale failure to implement any of the services required by Shaun M.'s IEP."  (Id.)

only does [Defendants'] wholesale disregard for the IEP services constitute a material failure to implement the IEP, but it also violates other provisions of the IDEA." (Id. at 18.) The foregoing is tantamount to a determination that a FAPE was denied. The Ninth Circuit reiterated the importance of this denial in V.S.:

> Nor are the issues on which Appellant[ ] prevailed merely technical; rather, they go to the *very essence of the Individuals with Disabilities Education Act*. The determination by the Hearings Officer and the district court that [the child] was denied a free and appropriate public education . . . – even setting aside the other issues on which Appellant[ ] prevailed – is the *most significant of successes possible under the Individuals with Disabilities Act*.

484 F.3d at 1234 (quoting Park ex rel. Park v. Anaheim Union High Sch. Dist., 464 F.3d 1025, 1036 (9th Cir. 2006)) (alterations in original, emphases added and omitted); see also Natalie M. v. Dep't of Educ., Civ. No. 06-00539 JMS-BMK, slip op. at 6-7 (D. Haw. July 19, 2007) ("[A] determination by a Hearings Officer that a student was denied a FAPE 'is the most significant of successes possible under the [IDEA].' By prevailing on the claim that Natalie was denied a FAPE, the legal relationship with Defendant certainly changed.") (citation and footnotes omitted)).

Based on the foregoing, the Court concludes that there was a material alteration of the parties' legal relationship and such alteration was judicially sanctioned. Accordingly, Plaintiffs are the prevailing parties and as such, are

entitled to an award of reasonable attorneys' fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B).

II.     Attorneys' Fees and Costs

To calculate an award of reasonable attorneys' fees in IDEA cases, courts use the lodestar calculation set forth in Hensley v. Eckerhart, 461 U.S. 424 (1983). See Aguirre v. Los Angeles Unified Sch. Dist., 461 F.3d 1114, 1121 (9th Cir. 2006). Under Hensley, the "starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." 461 U.S. at 433. Once calculated, the lodestar amount is presumptively reasonable, although it may be subject to adjustment in certain circumstances. Tirona v. State Farm Mut. Auto. Ins. Co., 821 F. Supp. 632, 636 (D. Haw. 1993); see also Fischer, 214 F.3d at 1119 n.4.

In this case, Plaintiffs request the following lodestar amount for work performed at the administrative level and on appeal:

|  | Hours | Rate | Lodestar |
|---|---|---|---|
| Administrative Level: |  |  |  |
| Irene Vasey (2008) | 46.7 | $185 | $ 8,639.50 |
| Irene Vasey (2009) | 75.4 | $200 | $15,080.00 |
|  |  |  | $23,719.50 |
| Appeal: |  |  |  |

|  |  |  |  |
|---|---|---|---|
| Mei Nakamoto | 29.67 | $275 | $ 8,186.00 |
| Irene Vasey | 35.00 | $200 | $ 7,000.00 |
| Senior Paralegal | 11.20 | $ 85 | $    952.00 |
| Paralegal | 130.00 | $ 50 | $ 6,500.00 |
|  |  |  | $22,638.00[6] |

|  |  |
|---|---|
| Subtotal | $46,357.50 |
| GE Tax (4.712%) | $ 2,184.37 |
| TOTAL | $48,541.87 |

(Exs. A, B.)

      As to the reasonableness of the number of hours expended, the party seeking fees bears the burden of proving that such hours were associated with the relief requested and reasonably necessary to achieve the results obtained. See Tirona, 821 F. Supp. at 636. Here, Plaintiffs attached to their motion documentation itemizing the number of hours expended. (See Exs. A, B.) Plaintiffs assert that said hours were associated with the due process hearing and appeal, and reasonably necessary to achieve the results obtained. (Mot. at 10-12, 13; Vasey Decl. ¶¶ 17, 18; Nakamoto Decl. ¶¶ 16, 17, 18.) Defendants do not claim otherwise. Thus, the Court FINDS that the number of hours expended are reasonable and RECOMMENDS that Plaintiffs be awarded such, as set forth above.

---

      [6] Plaintiffs request $22,668.00 as the lodestar amount for work performed on appeal. (Ex. B at 3.) This amount is incorrect. Plaintiffs incorrectly calculated the total amount for paralegal services. (See id.)

As to the reasonableness of the hourly rates sought, such rates should reflect those prevailing in the community for similar work performed by attorneys of comparable experience, skill, and reputation. See Webb v. Ada County, 285 F.3d 829, 840 (9th Cir. 2002); see also Tirona, 821 F. Supp. at 636. Here, Plaintiffs request for Vasey the hourly rates of $185 and $200 for work she performed in 2008 and 2009, respectively. (Mot. at 9-10, 12; Vasey Decl. ¶ 19.) Plaintiffs contend that such rates are reasonable because Vasey has more than fourteen years of experience in litigation and more than six years of experience handling IDEA cases. (Vasey Decl. ¶ 4.) Defendants do not oppose these rates. The Court FINDS that, based on the supporting declaration submitted by Plaintiffs, the hourly rates of $185 and $200 are reasonable for an attorney of Vasey's experience and skill. The Court therefore RECOMMENDS that Vasey be awarded such rates.

As for Nakamoto, Plaintiffs request the hourly rate of $275. (Mot. at 10, 12; Nakamoto Decl. ¶ 19.) Plaintiffs contend that this rate is reasonable because Nakamoto has twenty-five years of experience as a family law litigator; has participated in more than 1,000 oral arguments at the trial court and appellate levels; and has worked on ten appeals to Hawaii's appellate courts, this Court, and the Ninth Circuit Court of Appeals. (Nakamoto Decl. ¶ 8.) Defendants do not

oppose the rate requested. Thus, the Court FINDS that, based on the supporting declaration submitted by Plaintiffs, the hourly rate of $275 is reasonable and RECOMMENDS that Nakamoto be awarded this rate.

Lastly, Plaintiffs seek the hourly rates of $85 and $50 for work performed by paralegals. (Mot. at 12.) Plaintiffs do not offer an affidavit of counsel for the paralegals as required by Local Rule 54.3(e).[7] However, Defendants do not oppose the rates sought. The Court, being familiar with the prevailing rates in the community for paralegals, FINDS that the hourly rates of $85 and $50 are reasonable, and RECOMMENDS that they be awarded such.

Lastly, Plaintiffs seek recovery of the following costs, which were incurred on appeal: (1) $350.00 for the filing fee, (2) $25.00 for photocopying, and (3) $556.34 for online research. (Mot. at 13; Nakamoto Decl. ¶¶ 22, 23, 24; Ex. B at 3.) Defendants do not oppose these costs. Thus, the Court FINDS that the costs sought are reasonable and RECOMMENDS that Plaintiffs' be awarded such in the total amount of $931.34.

In accordance with the foregoing, the Court RECOMMENDS that Plaintiffs' motion be GRANTED and that Plaintiffs be awarded $48,541.87 for

---

[7] Local Rule 54.3(e)(1) provides that the affidavit of counsel shall include "a brief description of the relevant qualifications, experience, and case-related contributions of each attorney and *paralegal* for whom fees are claimed . . . ." (emphasis added).

attorneys' fees and $931.34 for costs.

IT IS SO FOUND AND RECOMMENDED.



/s/ Barry M. Kurren
United States Magistrate Judge
Dated: December 31, 2009

M. v. Hamamoto, et al., Civ. No. 09-00075 DAE-BMK; FINDING AND RECOMMENDATION THAT PLAINTIFFS' RULE 54(D) MOTION FOR DETERMINATION AND AWARD OF ATTORNEYS' FEES NAD COSTS BE GRANTED.